We'll turn now to 20-3033 U.S. v. Tennison. Mr. Haney, are you ready to proceed? I am, thank you, Your Honor. If it pleases the Court, my name is Tom Haney. I'm from Kansas, with the law firm of Stevens and Brand, and I represent the appellate in this case, and I was also trial counsel in this case for Mr. Tennison. Your Honors, obviously we're here today for an adversarial argument regarding Mr. Tennison's appeal from his conviction and sentencing for possession of methamphetamine with intent to distribute and conspiracy to distribute. I hope the Court will humor me for a moment that the government and the defense disagree on almost everything that we say in our brief and our issues we've raised, which is not unusual. I think the issues are well presented by each side in the brief, and they're articulated, and our respective positions are put before the Court. However, Your Honor, in this case, even though it's an adversarial situation, there are some fundamentals that the government and the defendant agree with, and it's how those fundamentals are going to be applied in this case, which are what the issues are. Fundamental number one is our, in our system of jurisprudence, defendant is presumed innocent until proven guilty beyond a reasonable doubt. There's no argument about that. Two, the government has the burden of proof and must prove each and every element of each and every charge to a unanimous jury of 12 beyond a reasonable doubt based upon evidence presented in court, legal evidence. Three, if the government fails in its burden of proof in proving its case, based solely upon the presumption of innocence, the defendant should be found not guilty of all the offenses charged. Four out of five issues I want to bring the Court's attention that the government may only introduce evidence, which is legal evidence, in a criminal case, and one of the issues involved evidence pursuant to Federal Rules of Evidence 404B, which is often before this Court, and the proceeding of that statute, if the statute is followed, as created by the legislature and interpreted by the courts. And in sentencing, Your Honor, lastly, the United States District Court must issue a legally fair sentence. We can argue until the cows come home for what's fair and what's not fair in a criminal case, but that's not the issue here, and that's not what we're arguing. We're arguing what legal fairness is. I want to provide the Court with a central theme of our argument, and in layman's terms, which I prefer to use to legal terms on occasion, that one has to walk the walk and not just talk the talk, which is what we have in this case. That, in other words, it's not sufficient to say the record supports the conviction, the record supports the sentence issued by the Court, and the record supports the admission of 404B evidence. There have to be specific references, specific items in the record, specific matters presented to the jury upon which they can make findings, and upon which the Court can make findings at sentencing. Your Honors, I have 48 years now, and I've appeared on both sides of federal criminal cases for the prosecution and the defense, and I've grown to have the highest respect for our system of justice, and although it's not perfect, it's the best one I know of. However, in this case, error occurred, and that error resulted in the defendant, Mr. Tennyson, being incarcerated for 17 and a half years in a federal prison for crimes he did not commit. Your Honor, no evidence was presented which a reasonable juror could find the defendant guilty of either being a member of a conspiracy or possessing methamphetamine with intent to distribute. The record shows, and evidence shows, Mr. Tennyson was a one-time customer of a conspiracy's large drug dealer. Counselor, what do you do with our cases that say if you're a major buyer, it can be presumed, reasonably inferred, that you know the result of a drug conspiracy? Your Honor, I think that's a definition as to an amount, and there has to be something accompanied by purchase of drugs other than just purchasing an amount of drugs. If you buy a carload of drugs, that's one thing. Your client wanted to buy and expected to buy a kilo of meth, which given the evidence that most users use one to two grams a day, that's a lot of meth, isn't it? Well, I think any amount of meth is a lot since it's an illegal substance. But Your Honor, keep in mind, number one, those conversations were not with Mr. Tennyson. Mr. Tennyson's name was not even mentioned in those conversations. This was a conversation by an informant who was a co-defendant, and part of that was hearsay, which the Mr. Tennyson went in the car to buy the meth and had the money to buy the meth. Is that a jury question that you're trying to get us to answer? Well, it's always a jury question, but the jury has to receive substantial evidence upon which they can make their decision. And our argument in this case is the, on January 31st of 2017, Mr. Tennyson had 254 or 245 grams of meth amphetamine on his person. That was it. He had $1,000 approximately on his person in a parking lot of casino. And Your Honor, I would submit that it's not reasonable to argue that someone who has 245 grams of meth is a dealer. I would also submit someone has $1,000 in their pocket can't be presumed to have $1,000 of drug proceeds in his pocket. There was no evidence at all regarding that. And the jury, this court has said on numerous occasions, to paraphrase, this is the latest one came from the U.S. versus Anya case, A-N-A-Y-A at 7-27-10-50. Along with the other cases, the court said the same thing. We will reverse a conviction for insufficient evidence only when no reasonable jury could find the defendant guilty beyond a reasonable doubt. But we will not uphold a suspicion of guilt. A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Your Honor, after the defendant was arrested on January 31st, he was indicted then on September 20th of the same year. And at that point, the case against the defendant should have been complete. The case was indicted and the alleged conspiracy was over. And the defendant was arrested then on February 14th, 2018, months and months later. And that's where the 404B evidence comes into play. And the courts faced that issue on January 31st. And I frankly, Your Honor, cannot find a case, I know the collective wisdom of the court is much greater than mine, where the Tenth Circuit has reversed a case based on improper admission of 404B evidence. There's always a first time. But in this case, the evidence was admitted over the preceding year. Mr. Tennyson was arrested stepping out of a vehicle which was not his and going into a house. And found in the vehicle was 1,218 grams. That's a large amount of methamphetamine. And Mr. Tennyson had a syringe in his pocket, which was not tested, but was destroyed by law But the government conducted no follow up investigation, either from the January 31st incident of arrest, or the February 14th incident of arrest on the by the government at any time. There was no smoking gun. There were no phone calls that Mr. Tennyson participated in, which were ever produced. There were no surveillance photographs of Mr. Tennyson doing anything illegal. There was no video of Mr. Tennyson doing anything illegal. There was no use of a found. There were no search warrants executed on Mr. Tennyson's house. There was no poll camera evidence of Mr. Tennyson. And your honor, the evidence was simply insufficient to show that Mr. Tennyson possessed methamphetamine with intent to sell. He was about a two gram a day user, heavy user. The money that was grams that he bought from Ms. Jobe for his own personal use. You know, isn't that two or three months to buy even for him? Yes. And actually, he wanted to initially a whole kilo, correct? According to Mrs. Jobe, he did. But other than that testimony from the informant, there was negotiations to buy a kilo. But if we have a kilo, that's a lot of meth. It is a lot of meth, your honor. Probably not intended for personal consumption, correct? Well, the word the court used is the magic word. Probably not. That's not the test beyond a reasonable doubt. Without question, a jury could think, well, he might be guilty of something, but there was no evidence that he was a dealer. There was no evidence he possessed with intent to distribute. And even a couple months supply of methamphetamine, your honors. It's not part of the record, but it's almost everyday common sense that any time an individual makes a buy on the street of methamphetamine, they risk arrest, exposure. Meth has no shelf life. It's going to be around for quite a while. And if you got the money and you want to buy 254 ounces, as opposed to two ounces or an ounce, it's a lot smarter to do that. But the jury was just left with the fact that here's 245 ounces. Here's $1,000. We've got a meth dealer. But the And what an amount for possession of meth with intent to sell. If we were looking at a carload of 10 kilos, it would be a whole different story. But in this case, it was an amount of meth which could be concealed on a person's body who was a meth user. And there was nothing beyond that, that Mr. Tennyson intended to sell. And he was involved in a single act on January 31st. 2017. And the only reason this Joe was involved with a 50 pound meth dealer was that he personally had a relationship with her, knew her. He didn't know anyone in this conspiracy well enough to even approach anyone to try and make a buy. But yet the jury was presented without jury made a finding without evidence that he was a member of the conspiracy other than a one time buy. That was it. It was a single act. Your Honor, just briefly at sentencing, we were handicapped by not having appropriate record, including Miss Job's present report, the government's five K recommendation, and the sentencing was so disparate in this case that she ended up getting a 21 month sentence after violating your bond several times. And Mr. Tennyson received a sentence of 151 months longer for lesser conduct. Thank you. Thank you, counsel. Miss McFarland. Good morning. May it please the court. My name is Michelle McFarland. I'm appearing on behalf of the United States in this case. This court should affirm Mr. Tennyson's convictions because the evidence was more than sufficient to support both Mr. Tennyson's drug trafficking convictions, including the evidence that was correctly admitted by the district court pursuant to federal rule of evidence. This court should likewise affirm Mr. Tennyson's sentence because it was sufficient but not greater than necessary considering Mr. Tennyson's offense conduct and criminal history and any sentencing disparities that existed between Mr. Tennyson and his co-defendants were warranted. The appellant raises three distinct issues on appeal to trial related issues and one sentencing issue. I'm going to address the sufficiency of the evidence claim first. The first issue raised by the appellant in this case is whether the evidence presented at trial was sufficient to support a conviction for both the conspiracy and the possession with intent to distribute more than 50 grams of methamphetamine. Counselor, what evidence is there that the defendant even knew about this conspiracy? I'm sorry, your honor. I what evidence is there that this defendant even knew about anything about this conspiracy? Your honor, I think that the evidence that the defendant knew about the conspiracy is is apparent when you look at the Mr. Tennyson's course of conduct on January 31st, 2017. I think that based upon his experience on that date and the different individuals he had interactions with, he could infer knowledge of the broader conspiracy even based upon that single act and even based upon that single day of participation with the members of the conspiracy. What about the testimony by the members? Rodriguez testified she didn't know defendant. Jobe said, testified that that transaction was the only time to her knowledge that defendant had transacted anything, any drug transaction with the conspiracy. That's contrary to what you're saying should be inferred. Your honor, with respect to Miss Rodriguez, I think that the jury heard the evidence that Miss Rodriguez was she occupied a specific role within the conspiracy. I believe air traffic controller was sort of you. She was an individual who was responsible for phones and for coordinating these purchases. I think with Miss Rodriguez specifically, it makes sense given her role in the larger conspiracy that she wouldn't know every major buyer of methamphetamine, especially if she is dealing directly with Miss Jobe as she was in this instance. So she's not a person who is going to be meeting with buyers. That wasn't necessarily her role. So the fact that she didn't know Mr. Tennyson isn't surprising in the case. With respect to Miss Jobe, I think that she she did testify that this was the only instance in which she and Mr. Tennyson went to purchase drugs from other members of the conspiracy. However, I think that this circuit says that a person can infer knowledge of a larger conspiracy and the scope of a conspiracy based upon a single act. And I think that Mr. Tennyson and the jury ultimately found Mr. Tennyson was able to do that based upon his experiences on that day. He had interactions with an individual before Miss Jobe. He had interactions with Miss Jobe. There were several phone calls between the two of them that was that was testified to by one of the case agents in the case. The two of them got in Miss Jobe's truck and they went to a location to meet other individuals as a member of the conspiracy. And it's clear based upon text messages and phone calls that Miss Jobe was interacting with Miss Rodriguez while she was with Mr. Tennyson. So Mr. Tennyson knew that there was another individual on the phone in addition to the people that showed up to bring the drugs to the location that they met. Isn't all that to show that he knew he was dealing with a conspiracy, but the charge is that he conspired with this conspiracy. And it sounds like if it's a one off, he needs whatever amount of, say, a kilo of of meth. And he learns that there's some people who can provide it. So he purchases from it. Is that enough to establish? I think he needs years of conspiracy with those folks. I'm not talking about the substantive offense. There's plenty here for that, it seems. But to show that he had an agreement with this conspiracy. Your Honor, I think that in this case, and I think that what the precedent, what the 10th Circuit precedent says is that it can be inferred from one act and that knowledge can be inferred from one act. I think he needs to know, as I noted, the existence and the scope of the conspiracy. And I think he needs to understand that the success of him purchasing the methamphetamine depends on the interdependent actions of others. And I think that a major buyer of a controlled substance understands that, as the district court noted, that a major buyer of a controlled substance understands that his purchase results from those interdependent acts and working of a larger operation. And in this instance, I mean, he has knowledge of the overall conspiracy. And he has knowledge also that when he's giving the $2,500 that he gave to put into the conspiracy and they're engaging in a transaction in which he gets methamphetamine, a distribution quantity of methamphetamine, that he understands that he is engaging with the conspiracy. And he's engaging with these other individuals and furthering that purpose of both giving them money and methamphetamine of his purpose and methamphetamine being out in the community. Ms. McFarland, why don't you tell us what happened on this night in January of 2017 in the parking lot of the grocery store? So what did the defendant, what was his communication? What was his interaction with the person or persons other than Ms. Jobe? Your Honor, the testimony at trial, primarily from Ms. Jobe and from, there was some surveilling officers that were able to corroborate at least partial bits of this testimony. But Ms. Jobe's testimony at trial was that Mr. Tennyson was in her vehicle, that there was another individual that brought the methamphetamine into Ms. Jobe's vehicle. He had the money. Mr. Tennyson gave the money and took the methamphetamine from this other individual. I believe there were two other individuals who showed up, but there was one that got in the car and provided the methamphetamine. And I think. So there was just an observation of persons other than, in addition to the person who got into the backseat of the truck, right? Yeah, there was another individual who was present as well, as well as an observation. There was no interaction between, at least this wasn't established that there was any interaction between Ms. Rodriguez and Mr. Tennyson. But the testimony at trial established that he was, Mr. Tennyson was at least aware that Ms. Jobe was communicating with another individual that was Ms. Rodriguez in order to coordinate the transaction. All right. And who did Mr. Tennyson had the money, had the money, right? That's correct. Yes. And who did he give the money to, Ms. Jobe or the person in the backseat of the truck? The other, the other individual in the truck. So he did not give it to Ms. Jobe? No, Ms. Jobe testified that she didn't receive any, any money as part of the transaction. So she was just doing it for a favor for Tennyson? She didn't get any money or did she get drugged? I believe what she testified to is that she, when she was helping and setting up the transaction, she had thought potentially she would get some sort of commission or some sort of money or something as a result of the deal. But when the, when the deal for the larger amount, the kilogram fell through, she knew that since it was a lower amount, she likely wouldn't be receiving anything. That was, I believe, her testimony at trial. And so, and, you know, then, of course, the, both of them were apprehended in the parking lot of the casino. And there was, there was no opportunity at that point since there was a car stop for that interaction to take place, right? Does the evidence indicate when they, later at the casino, when they were apprehended, does it indicate that the government took both the drugs and the money? Your Honor, the drugs were located at the scene in the parking lot of the casino. They fell out of Mr. Tennyson's pants. I believe the testimony was that the money was recovered later. It was in his wallet, Mr. Tennyson's wallet. So I believe it was recovered at a later, at a different location, potentially at the Jackson County Sheriff's Department or another law enforcement location. So Mr. Tennyson, at least after they go from the grocery store lot where the deal occurred to the casino lot where it fell apart, at that point he has, even though they're not taken into custody, he has no particular incentive to pay Ms. Jobe in either drugs or money, correct? Not, I would argue that he didn't have an incentive. I mean, I think it was clear based upon Ms. Jobe's testimony that there wasn't necessarily, that there, that part of, you know, whether Mr. Tennyson would pay Ms. Jobe, whether she would be getting anything from the deal wasn't, that hadn't been decided. Was there any testimony as to the communications between Ms. Jobe and the person in the back of her truck? You told us there are communications on the phone that have been identified in the trial as being with Ms. Rodriguez. Is there, was there any testimony about Ms. Jobe's communication with the person in the back of the pickup who brought the drugs there? Your Honor, I believe that the testimony with respect to the person in the back, that there was potentially a, Ms. Rodriguez was interpreting for that interaction. So I, I don't know that there was specifically testimony about Ms. Jobe, Ms. Jobe, excuse me, having any interaction with the person in the back of the truck. And was there any testimony about Mr. Tennyson's communication with the person in the back of the truck? I don't recall anything specific about them communicating with words, Your Honor. There was an exchange, obviously, of money and drugs in that instance. Thank you. Your Honor, with respect to Mr. Tennyson's intent in this case, I think, and his knowledge of the broader conspiracy, again, I would argue that that can be inferred based upon the individuals that he was interacting with. As I've already argued, and additionally, I think that that can be inferred based upon the transaction that he intended to complete, which was the transaction for the kilogram of methamphetamine, that ultimately was only unable to be completed due to the fact that the organization did not have the resources to provide that to Mr. Tennyson. Your Honor, if the panel have no more questions, I'll yield the remainder of my time. Thank you, counsel. Counsel are excused. Case is submitted.